WALDEN, Judge.
This is an appeal by the state from a final order that after trial, dismissed the state’s complaint with prejudice. It is being treated here as a full appeal. We affirm.
The State of Florida sought to enjoin South County Jewish Federation (“Federation”), and others, from operating a bingo hall allegedly in violation of Florida Statutes, section 849.093. By agreement between the respective parties, the case was heard without a jury based upon a set of stipulated facts. The stipulated facts are the following.
The Federation is a non-profit, charitable organization qualified to conduct bingo games pursuant to section 849.093, Florida Statutes (1984). South County Jewish Day School (“School”) is a subsidiary organization of the Federation qualified to receive the proceeds from bingo games pursuant to section 849.093.
Konover, Patron & Rosen, a Florida partnership not qualified as a non-profit or charitable organization, owns the premises known as Kingo-Bingo. The Federation leased Kingo-Bingo for a term of three years. Pursuant to the lease, the Federation pays rent of $80,080 per year or $6,673.33 per month to Konover, Patron & Rosen. Further, the Federation is responsible for the insurance, security, utilities and general maintenance of the premises.
The premises are leased by the federation exclusively for the purpose of conducting the business of bingo. The actual conduct of the bingo games, including the number of games, size of prizes, calling of numbers and letters, and announcing of winners, is in compliance with section 849.-093, Florida Statutes.
The Federation subleases the premises to the following groups, each of which qualifies as a non-profit, charitable organization as defined in section 849.093, Florida Statutes: Temple B’nai Torah (“Temple”), West Boca Community Center, (“Center”), and South County Migrant Worker’s Council (“Council”). Bingo games are conducted on the premises for the benefit of the School, the Temple and the Center on two days per week, and on one day a week for the benefit of the Council.
Pursuant to the terms of the subleases, both the Temple and the Center pay rent of $2,636 per week to the Federation. The Council pays rent of $1,318 per week. Included in these figures are prorated expenses of $510 per day.
Gross proceeds from the bingo games are deposited in the Federation’s bingo account. For both the Council and the Temple, their weekly rental payments, plus a proportionate share of utilities, security and maintenance expenses are deducted by the Federation from the appropriate gross proceeds. The balance of the gross proceeds are then given to the charity on whose behalf the games were conducted. Money received by these two organizations comes in the form of a check drawn on the Federation’s bingo account.
The Center directly receives the net proceeds from each session from which they benefit, and then pays its weekly rent to the Federation by its own check. The net proceeds from the bingo games are used by each of the charities for charitable purposes.
Frank Mazzagatti, an employee of the Federation, has full responsibility for maintenance of the premises. He is also responsible for the deposit of the proceeds from all of the bingo games into the Federation’s bingo account. Mazzagatti is paid a salary by the Federation for this work.
Proceeds from the bingo games are used to pay for the rent and maintenance of the premises and all expenses associated with *1185 the conduct of the games. An independent contractor is paid from the proceeds of the bingo games to prepare the paper and supplies used by bingo players at all sessions of bingo games played on the premises.
Several of the persons who actually conduct the bingo games on the premises were not members of, nor associated with, the four organizations in any way prior to the time they began assisting with the bingo games. All such persons were enrolled in each of the four charities that benefit from the games at the time they began assisting with the bingo games.
Persons conducting the bingo games receive tips from players which are pooled and then divided evenly each session among the volunteers in attendance. The average amount of tips received per person per session is approximately $35.
From January 1, 1985, until January 1, 1986, the amount of money actually distributed to the charities is as follows: the Temple, $18,331.54; the Center, $40,064; the Council, $11,266.40; and the School, $285,000.
Based on these stipulated facts and testimony of one witness, the trial court, as stated, dismissed with prejudice the state’s petition for temporary and permanent injunctions.
The issues presented were:
I. WHETHER BINGO GAMES MAY BE LEGALLY CONDUCTED SEVEN DAYS PER WEEK ON THE KINGO-BINGO PREMISES BY MORE THAN ONE CHARITABLE ORGANIZATION.
II. WHETHER THE PERSONS CONDUCTING THE BINGO GAMES AT KINGO-BINGO PREMISES ARE IN VIOLATION OF SECTION 849.093(7), FLORIDA STATUTES.
III. WHETHER THE PROCEEDS FROM THE BINGO GAMES CONDUCTED AT KINGO-BINGO ARE BEING USED IN VIOLATION OF FLORIDA SECTION 849.093(2)(a), FLORIDA STATUTES.
The state asserts in Point I that the Federation is conducting bingo games on the premises of Kingo-Bingo in violation of section 849.093(10)(c) and (d), Florida Statutes. Specifically it is argued that the effect of the subleasing arrangement is to make the Federation the primary beneficiary of all bingo games seven days a week in violation of section 849.093(10)(c).
Section 849.093(10)(c) provides:
(10) Bingo games may be held only on the following premises:
(c) Property leased for a period of not less than one year by a charitable, nonprofit, or veterans’ organization, providing the lease or rental agreement does not provide for the payment of a percentage of the proceeds generated at such premises to the lessor or any other party and providing the rental rate for such premises does not exceed the rental rates charged for similar premises in the same locale; ...
The state does not dispute that the lease agreement between the Federation and Konover, Patron & Rosen complies with this section, and, therefore, the two days of bingo by the Federation are legal. However, the state argues that subsection (10)(c) authorizes only one organization to conduct bingo two days per week on the premises. Subleasing to other charities to conduct bingo during the other five days, according to the state, would be allowed only if the property was owned by a charitable organization, qualifying it under subsection (10)(d).
The state cites two cases as authority for this argument. However, these cases are not applicable to the instant case. Paskind v. Salcines, 390 So.2d 1198 (Fla. 2d DCA 1980), involved a for-profit corporation subleasing premises to non-profit corporations in order to conduct bingo games, where most of the profits from these games were passed to the for-profit corporation. The court held that this operation violated section 849.093 because the legislature intended for the non-profit organizations to be the primary beneficiaries of the proceeds of the bingo games, whereas, in Paskind, the *1186 for-profit corporation was the primary beneficiary.
Further, the court noted that subsection (10)(c) only refers to one charity, and so bingo games can be conducted for more than two days a week at the same premises, only if the property qualifies under (10)(d) (charitable organization owns the property). The legislature, according to the court, never intended the bingo exception to include the operation of a large-scale, commercial bingo operation as set up in Paskind.
The bingo operation in the instant case differs significantly from that in Paskind. In the instant case, unlike Paskind, the non-profit organizations are the primary beneficiaries of the proceeds of the games under the subleases. The Federation only receives rent from these organizations, which is allowed under subsection (10)(c). Further, Paskind involved the former subsection (10)(c), which allowed bingo on “property leased full-time for a period of not less than one year by the non-profit organization or by the charity or organization that will benefit by the proceeds” (emphasis added). The use of the word “the” before charity or organization does imply that the legislature intended to refer to only one charity. However, subsection (10)(c), which applies to the instant case, refers to “a” charity or organization. The use of the word “a” does not seem to limit this subsection to only one charity or organization.
As the court in Paskind noted, the legislature did not intend for the bingo exception to include the operation of a larges-cale, commercial bingo operation. The bingo operation in the instant case does not circumvent this intent. Each of the nonprofit organizations herein entered valid subleases that make them the primary beneficiaries of the proceeds, not a for-profit organization. As such, the provisions of subsection (10)(c) are met and the bingo operation is valid.
The other case cited by the state is North Bay Village Lions Foundation, Inc. v. City of Miami Beach, 338 So.2d 236 (Fla. 3d DCA 1976). In North Bay Village, the plaintiff, a charitable organization, operated a bingo game two days a week on the leased premises. For the other five days, it allowed other charities to operate bingo games with the understanding that the proceeds received from the games were to be given to plaintiff. There were no formal arrangements between these organizations. This bingo operation, according to the court, did violate section 849.093.
Again, in the instant case, unlike North Bay Village, the proceeds of the games go to the organizations that run the games as required by statute. Further, the organizations, in the instant case, entered into formal subleases with the Federation, in compliance with subsection (10)(c). The state attempts to show that the rental rates paid by these organizations exceed “the rental rates charged for similar premises in the same locale”, by comparing their rent to the rent paid by the Federation under its lease. However, it seems obvious that rental rates under leases and subleases will be different, because they involve different arrangements. No other evidence is presented to show that the rental payments pursuant to the subleases violate subsection (10)(c).
Therefore, the trial court was correct in finding that the bingo operation herein complied with the legislative intent and the provisions of the applicable statute sections.
In Point II the state asserts that the games are being conducted by unauthorized persons in violation of section 849.-093(7). Basically, appellant argues that the persons conducting the games are not “bona fide members” of the non-profit organizations, and are being compensated, by tips, in violation of section 849.093(7). This argument is without merit.
Section 849.093(7) provides:
(7) Each person involved in the conduct of any bingo game must be a resident of the community where the organization is located and a bona fide member of the *1187 organization sponsoring such game and may not be compensated in any way for operation of such bingo game. When bingo games are conducted by a charitable, nonprofit, or veterans’ organization, the organization conducting the bingo games shall be required to designate up to three members of that organization to be in charge of the games, one of whom shall be present during the entire session of which the bingo games are conducted. The organization conducting the bingo games is responsible for posting a notice, which notice states the name of the organization and the designated member or members, in a conspicuous place on the premises at which the session is held. In no event may a person regularly involved in the conduct of bingo games be a participant in bingo games conducted at the same location. [Emphasis added]
The state suggests that a bona fide member refers to persons who “honestly, openly, and sincerely” belong to the organization. The persons conducting the games in the instant case, according to the state, are not bona fide members because they enrolled in the organizations only after arranging to assist in conducting bingo games for that group. Therefore, the state argues, these persons are not the type of “members” authorized to run the games.
Contrary to the state’s argument, “bona fide member” does not refer to the subjective intent of a person. Obviously, the legislature did not intend for the court to look into the “hearts and minds” of all persons claiming to be members of an organization. “Bona fide member” merely means the person is properly enrolled in the organization by paying dues and complying with the membership requirements. In the instant case, the parties stipulated that the persons conducting the games are dues-paying members properly enrolled in the organizations. As such, the persons are “bona fide members” as required by section 849.093(7).
The state also argues that the persons conducting the games are being illegally compensated for such, by receiving tips from the bingo players. The legislature intended, according to the state, that the games are to be run only by persons who donate their time and effort in order to assist the beneficiary charity. Therefore, any tips must be put into the proceeds and given over to the charity.
Again, the state’s argument must fail. The tips the persons receive are not compensation. As the trial court held, “[W]hat the volunteers received is uncertain, is not based upon any percentage of victories or losses or the pot, and is not contributed to in any way by the Federation or anyone acting on its behalf.” Obviously, the monies received are not quid pro quo for work, as the state asserts; but, rather, the monies are merely indicative of the generosity of the players. Therefore, section 849.093(7) has not been violated.
In Point III the state claims that the proceeds of the bingo games are being used to pay utilities and rent in violation of section 849.093(2)(a). This section, according to the state, only allows the proceeds to be spent on bingo halls, cards and stamps; not on intangibles like rent, electricity or security.
Section 849.092(2)(a) states in pertinent part:
[T]he entire proceeds derived from the conduct of such games, less actual business expenses for articles designed for and essential to the operation, conduct and playing of bingo, are donated by such organizations to the endeavors mentioned above.
Obviously, bingo games must be played in a room, which necessitates the paying of rent, utilities, and other such “intangibles”. Clearly, the legislature intended for these necessities to be considered “business expenses” that can be paid by part of the proceeds, or charities would not be able to conduct the bingo games at all. This seems reinforced by section 849.093(10)(c), which specifically allows charities to lease property on which to play the games, as long as the rental agreement does not base *1188 the rent on a percentage of the funds received from the operation of the games.
In the instant case, the trial court found that almost 80% of the proceeds of the bingo games is returned to the participants or players. There is no argument that the rent is based on a percentage of the funds received from the operation of the games. Therefore, the use of the other proceeds to help pay the rent and utilities does not violate the legislative intent or the applicable provision of section 849.093, and the trial court was correct in finding that the operational expenses are “clearly contemplated by the statute.”
Upon full consideration, no reversible error has been demonstrated.
AFFIRMED.
ANSTEAD and DELL, JJ., concur.