The Honorable Curtis A. Golden State Attorney First Judicial Circuit of Florida Post Office Box 12726 Pensacola, Florida 32575 Attention: Mr. William P. White, Jr. Assistant State Attorney
Dear Mr. Golden:
You have asked my opinion of the following questions:
 1. May local chapters of national or regional organizations be formed and then conduct bingo operations prior to the expiration of three years from the date of their local existence as required by s. 849.093, F.S.?
 2. May an organization which otherwise qualifies under s. 849.093, F.S., conduct bingo games on premises leased from another organization also appropriately qualified and currently conducting bingo games on those premises?
 3. May an organization, which has applied for exempt status under s. 501(c) of the Internal Revenue Code and which otherwise qualifies under the statute, conduct bingo games before the exemption is granted?
In summary, I am of the opinion that:
 1. A local chapter or branch of a national or regional organization may not conduct bingo games until such chapters or branches have been in existence and engaged in charitable activities for at least three years.
 2. A local chapter which otherwise qualifies under s. 849.093, F.S., may conduct bingo games on premises leased from another charitable organization which is also qualified and currently conducting bingo games on the same premises if the proceeds of the game go to the organization conducting the game.
 3. A charitable, nonprofit or veterans' organization must receive confirmation of its tax exempt status under s. 501(c) of the Internal Revenue Code before conducting bingo games.
According to your request, local branches or chapters of national or regional organizations are conducting bingo games in your geographic area under the authority of s. 849.093, F.S. You state that other local chapters or branches of these same organizations are being formed to conduct bingo operations for money raising purposes. Your inquiry thus addresses their qualifications and the possible circumvention of the statute regulating bingo operations because of the affiliation of these new chapters with a parent organization. Specifically, you express the concern that a proliferation of bingo operations could result by the creation of a series of shell organizations for the purpose of raising money through bingo.
QUESTION ONE
The conduct of bingo games, which is a form of gambling,[1] has been limited by the Legislature to certain charitable, nonprofit or veterans' organizations meeting the statutory criteria set forth in s. 849.093, F.S.[2] In 1984, when it was recognized that bingo operations were being conducted by nonprofit groups not engaged in charitable activities and by private persons using the exemption for charitable organizations as a means for operating for-profit bingo halls,[3] the Legislature revised s. 849.093, F.S., to define the organizations qualified to conduct bingo games and confine the operation of the games to those qualified organizations. The statutory definition of qualified organizations reads:
 "Charitable, nonprofit, or veterans' organization" means an organization which has qualified for exemption from federal income tax as an exempt organization under the provisions of s. 501(c) of the Internal Revenue Code of 1954; which is engaged in charitable, civic, community, benevolent, religious, or scholastic works or other similar activities; and which has been in existence and active for a period of 3 years or more.[4] (e.s.)
In addition, the 1984 legislation also prescribed that any charitable, nonprofit or veterans' organization conducting bingo must be located in the county or within a 15-mile radius of where the bingo game is located,[5] that three members of the sponsoring organization must be designated to be in charge of the games, that one of those so designated be present during the entire session at which bingo games are played, and that the name of the organization, as well as the names of the members in charge, be placed in a conspicuous place on the premises where the session is held.[6] By the addition of the words "and active" to the three-year existence requirement and by requiring the games be played within the county or a 15-mile radius of the organization's location, bingo games conducted to raise money are restricted to local organizations having a prior record of charitable endeavors.
The statute authorizing bingo contains no language prohibiting more than one qualified local branch or chapter of a national organization from conducting bingo games in the same geographic area. However, an organization which has in all respects qualified to conduct bingo games cannot be used to foster the operations of another not qualified under s. 849.093, F.S., because of the specific legislative intent expressed in s. 849.093(2)(b), F.S., which reads:
 It is the express intent of the Legislature that no charitable, nonprofit, or veterans' organization serve as a sponsor of a bingo game conducted by another, but such organization may only be directly involved in the conduct of such a game as provided in this act.
It is, therefore, my opinion that any new local chapter or branch of a national or regional organization may qualify for bingo operations only by meeting all the statutory requirements set forth in s. 849.093, F.S., which include the organization's existence for three years, a demonstrated three-year activity in charitable endeavors, and a local presence. These requirements may not be avoided through sponsorship by a national or regional parent organization. Therefore, Question One is answered in the negative.
QUESTION TWO
You state that the new charitable organizations wish to conduct their bingo games on premises leased from another organization which is currently conducting bingo operations at the same location. Under s. 849.093(10), F.S., which specifies places where bingo games may be played, a lease of property by one qualified organization from another is permissible where the lessor corporation owns the property.[7] Where the lessor organization does not own the property but is itself leasing from another owner, a sublease to another charitable organization would be permissible provided the base lease met the requirements of s. 849.093(10)(c), F.S., which prohibits the payment of a percentage of the profits to the lessor or any other party. This was the conclusion reached in State v. South County Jewish Federation,491 So.2d 1183, 1186 (4 D.C.A.Fla., 1986), where more than one bingo qualified organization had entered into subleases with South County Jewish Federation, a lessee under a three-year lease with a for-profit corporation. The court held specifically:
 [T]he legislature did not intend for the bingo exception to include the operation of a largescale, commercial bingo operation. The bingo operation in the instant case does not circumvent this intent. Each of the nonprofit organizations herein entered valid subleases that make them the primary beneficiaries of the proceeds, not a for-profit organization. As such, the provisions of subsection (10)(c) are met and the bingo operation is valid.[8] (e.s.)
By this decision, it appears that more than one charitable organization may utilize the same premises for bingo operations with each limited to no more than two sessions per week.[9]
It is my opinion that a nonprofit organization may lease a premises part-time from another nonprofit, charitable or veterans' organization for bingo games if that lessor owns the premises or is under a lease meeting the criteria of s. 849.093(10)(c), F.S. In the latter case, the base lease must be for a term of at least one year and the subleasee must be the primary beneficiary of the game proceeds.
QUESTION THREE
The requirement that an organization be tax exempt under s. 501(c) of the Internal Revenue Code first appeared in Ch. 84-247, Laws of Florida, and is but a further expression by the Legislature that bingo is permissible where the proceeds are used for charitable purposes.[10] Although a federal tax exempt status was not a statutory requirement for bingo games prior to 1984, the Florida Supreme Court in upholding the predecessor statute in Carroll v. State, 361 So.2d 144, 147 (Fla. 1978), made reference to the federal tax exemption afforded to qualified nonprofit organizations as an example of appropriate legislative action, saying:
 The motivating forces behind granting exclusionary privileges to non-profit and veterans' organizations by Section 849.093, Florida Statutes (1975) and granting tax exemptions to qualified non-profit organizations by Congress in the Internal Revenue Act are identical; namely the promotion of participation and support for charitable, civic, community, benevolent, religious, scholastic or other similar activities. Statutes of other jurisdictions, exempting legalized gambling schemes for the benefit of public, religious, or charitable purposes, from the operation of statutes directed against gambling in general have been sustained as within the power of state legislatures.
The addition of the tax exempt requirement is consistent with the concept of providing exclusionary privileges to charitable, non-profit or veteran's organizations. The mere application for the IRS exemptions, which could be either accepted or rejected, would not satisfy that objective. Question Three is, therefore, answered in the affirmative.
Sincerely,
Robert A. Butterworth Attorney General
[1] Perlman v. State, 269 So.2d 385, 387 (4 D.C.A.Fla., 1972).
[2] The inherent authority of the Legislature to regulate this form of gambling has been declared to be constitutional. Carroll v. State, 361 So.2d 144 (Fla. 1978); and Greater Loretta Improvement Association v. State ex rel. Boone, 234 So.2d 665, 669
(Fla. 1970).
[3] See, Staff Reports of CS/HB 210 of Committee on Regulated Industries and Licensing, House of Representatives, dated April 16, 1984, and June 13, 1984; audio tape of Committee Hearing, April 3, 1984.
[4] Section 849.093(1)(c), F.S.
[5] Section 849.093(8), F.S.
[6] Section 849.093(7), F.S.
[7] Section 849.093(10)(d), F.S.
[8] See also, North Bay Village Lions Foundation, Inc. v. City of Miami Beach, 338 So.2d 236 (3 D.C.A.Fla., 1976), holding that sharing the proceeds with the lessor charitable organization violated s. 849.093, F.S., and Paskind v. State ex rel. Salcines,390 So.2d 1198 (2 D.C.A.Fla., 1980), holding that a lessor for-profit corporation could not be a beneficiary of the proceeds.
[9] Section 849.093(4), F.S., provides:
 The number of days per week during which organizations authorized hereunder may conduct bingo games may not exceed 2.
In State v. South County Jewish Federation, supra, where three sublessees each conducted bingo sessions on two days per week and a fourth conducted bingo on one day, the premises were utilized seven days per week.
[10] The courts have approved bingo as an exemption to the laws banning gambling based upon a determination that it is in furtherance of charitable activity. See, Carroll v. State,361 So.2d 144, 147 (Fla. 1978), where the Supreme Court ruled: The general thrust of the classification allowing non-profit and veterans' organizations to conduct bingo and guest games, is that in addition to providing a source of recreation, relaxation, and social intercourse, the proceeds are donated to charitable, civic, community, benevolent, religious, scholastic, or other similar endeavors. This is for the general welfare and removes bingo profits from the purview of organized gambling.