Honorable Curtis A. Golden State Attorney First Judicial Circuit
QUESTION:
1. Pursuant to s. 849.0931, F.S. (1992 Supp.), may Organization A run a session of bingo with three 250 jackpots and then after a break or intermission, Organization B run its session with three 250 jackpots on the same day and on the same premises?
2. Does a game in which players buy one or more numbers and, if they bingo on that number, not only win the regular prize money but also additional money sometimes in excess of the 250 jackpot maximum, constitute a form of lottery or gambling not authorized under s. 849.0931, F.S. (1992 Supp.)?
3. Does s. 840.0931, F.S. (1992 Supp.), restrict a charitable, nonprofit or veterans' organization to conducting a bingo game in the county where it has its main or home office?
4. May the proceeds derived from bingo be used for additional payments for administrative expenses, clean-up expenses and set-up expenses under s. 849.0931(2)(a), F.S. (1992 Supp.)?
5. What criteria is to be used in determining whether the rental rate for property does not exceed the rental rate charged for similar premises in the same locale pursuant to s.849.0931(11)(c), F.S. (1992 Supp.)?
6. Is there an exception to s. 849.0931(8), F.S. (1992 Supp.), which provides that each person involved in the conduct of any bingo game must be a resident of the county where the organization is located and a bona fide member of the organization sponsoring the game, which permits a nonmember of the organization to conduct bingo where all the members of the organization are physically or mentally unable to conduct the games?
SUMMARY:
1. In the absence of judicial or legislative clarification, this office cannot conclude that s. 849.0931, F.S. (1992 Supp.), prohibits a qualified organization from running a session of bingo with three 250 jackpots and then after a break or intermission, another qualified organization running its session with three 250 jackpots on the same day. It may, however, be advisable to seek legislative or judicial clarification on this issue.
2. The playing of a game where a player buys one or more numbers and if the player bingos on that number, he or she wins not only the regular bingo money but additional money, constitutes a form of lottery or gambling not authorized by s. 849.0931, F.S. (1992 Supp.).
3. While nothing in s. 849.0931, F.S. (1992 Supp.), limits the ability of a charitable, nonprofit or veterans' organization to conduct bingo games only in the county where its main or home office is located, it does require the organization itself to be located in the county or within a 15 mile radius of where the bingo game is located. The residency of the various members of the organization would not appear to satisfy that requirement.
4. In light of the decision in State v. South County Jewish Federation,[1] which interpreted substantially the same language as is currently contained in s. 849.0931, F.S. (1992 Supp.), to include payment of rent, utilities and other "intangibles" necessary for the charitable, non-profit or veterans' organization to conduct the game, it appears that operational expenses which are necessary to conduct the game of bingo, such as set-up and clean-up expenses, may be paid from the proceeds of bingo games.
5. Section 849.0931, F.S. (1992 Supp.), requires that the rental rate may not exceed that charged for property in the same locale which is comparable or resembles the property to be rented. A number of factors may be considered such as the size, type of building; however, the determination of what constitutes "similar premises" in any given instance involves mixed question of law and fact which this office cannot resolve.
6. Section 849.0931, F.S. (1992 Supp.), requires, among other things, that each person involved in the conduct of the bingo game must be a bona fide member of the organization sponsoring the game. There is currently no exception to the above statutory requirement.
AS TO QUESTION 1:
The authority to conduct bingo games, which are a form of gambling,[2] in this state has been limited to certain charitable, nonprofit or veterans' organizations and to certain condominium or mobile home owners' associations and groups of residents of mobile home parks.[3] Section 849.0931, F.S. (1992 Supp.), in prescribing the conditions for conducting such games, prohibits an authorized organization from conducting bingo more than two days a week.[4] In addition, "[n]o jackpot shall exceed the value of 250 in actual money or its equivalent, and there shall be no more than three jackpots in any one session of bingo."[5] "Session" is defined as "a designated set of games played in a day or part of a day."[6]
(e.s.)
Pursuant to s. 849.0931(7), F.S. (1992 Supp.), "[t]here shall be no more than three jackpots on any one day of play." It is not clear, however, whether the prohibition against more than three jackpots on any one day of play is limited to games being conducted by a single qualifying organization or applies to all games played on the same premises by several qualified organizations.
Section 849.0931, F.S. (1992 Supp.), limits where bingo games may be held by charitable, nonprofit or veterans' organizations to premises owned by the qualified organization conducting the game or benefiting from the proceeds, to premises leased by such organization for a period of not less than one year,[7]
or to property owned by a municipality or county which has specifically authorized the use of such property for such purpose.[8]
In considering its predecessor statute,[9] which contained a similar limitation on where bingo games could be held, the court in State v. South County Jewish Federation[10]
held that the statute was not violated by a system under which one qualifying charity leased the premises and conducted bingo on two days and then subleased the premises to another qualifying charity which conducted bingo on one or two other days each week.
In the absence of legislative or judicial clarification, this office cannot conclude that s. 849.0931, F.S. (1992 Supp.), on its face prohibits one qualified organization running a session of bingo with three jackpots of 250 and then, after a short break or intermission, another organization run its session on the same premises with three jackpots of 250. It may, however, be advisable to seek legislative or judicial clarification on this issue.
AS TO QUESTION 2:
You state that some organizations are conducting a game in which players are allowed to purchase one or more numbers. If the players bingo on a number they have purchased, they win not only the regular bingo prize money but additional money such that the prize may be in excess of the 250 jackpot maximum.
Section 849.0931(5), F.S. (1992 Supp.), provides that "[n]o
jackpot shall exceed the value of 250 in actual money or its equivalent . . . ." (e.s.) The statute specifically defines what constitutes the bingo game,[11] prescribing how the game is to be played and when a player is to be declared a winner.[12]
Nothing in the statute authorizes or otherwise provides for such a game to be played. Although tied to the bingo game, the game appears to constitute a separate game of chance not contemplated in s. 849.0931, F.S. (1992 Supp.). Where the Legislature has prescribed the method of doing something, that is, in effect, a prohibition against it being done in any other way.[13]
Therefore, I am of the opinion that the playing of a game where a player buys one or more numbers and if the player bingos on that number, he or she wins not only the regular bingo money but additional money, constitutes a form of lottery or gambling not authorized by s. 849.0931, F.S. (1992 Supp.).
AS TO QUESTION 3:
Pursuant to s. 849.0931(9), F.S. (1992 Supp.), "[e]very charitable, nonprofit, or veterans' organization involved in the conduct of a bingo game must be located in the county, or within a 15-mile radius of, where the bingo game is located." You ask whether such an organization may only conduct bingo in the county where its main or home office is located.
As this office stated in AGO 88-41 in considering a similar requirement in the predecessor statute,[14] the requirements that a charitable, nonprofit, or veterans' organization be in existence and active for a period of three years or more and be located within the county or a 15-mile radius of where the bingo game is to be played, restricts such games tolocal organizations having a prior record of charitable endeavors.
Nothing in the statute appears to limit the ability of a charitable, nonprofit or veterans' organization to conduct bingo games only in the county where its main or home office is located. Section 849.0931, F.S. (1992 Supp.), however, does require theorganization itself to be located in the county or within a 15-mile radius of where the bingo game is located. The residency of the various members of the organization would not appear to satisfy that requirement. Nor can I conclude, absent legislative or judicial clarification, that the activities of some members of the organization within the county would necessarily satisfy the requirement that the organization itself is located in the county or within a 15-mile radius of where the bingo game is located although such a determination would appear to involve mixed questions of law and fact which this office cannot address.
AS TO QUESTION 4:
Section 849.0931(2)(a), F.S. (1992 Supp.), provides:
 None of the provisions of this chapter shall be construed to prohibit or prevent charitable, nonprofit, or veterans' organizations engaged in charitable, civic, community, benevolent, religious, or scholastic works or other similar endeavors, which organizations have been in existence and active for a period of 3 years or more, from conducting bingo games, provided the entire proceeds derived from the conduct of such games, less actual business expenses for articles designed for and essential to the operation, conduct, and playing of bingo, are donated by such organizations to the endeavors mentioned above. In no case may the net proceeds from the conduct of such games be used for any other purpose whatsoever. . . . (e.s.)
Section 849.093, F.S. 1991, formerly authorized organizations licensed to conduct bingo to use bingo proceeds for certain "authorized expenses."[15] In adopting s. 849.0931, F.S. (1992 Supp.), however, the Legislature did not reenact the provisions relating to "authorized expenses" but rather relied on language used in an earlier version of s. 849.093, F.S., which stated:
[T]he entire proceeds derived from the conduct of such games, less actual business expenses for articles designed for and essential to the operation, conduct, and playing of bingo, are donated by such organizations to the endeavors mentioned above.[16]
In State v. South County Jewish Federation,[17] the Fourth District Court of Appeal was asked whether the use of proceeds from bingo games to pay for the rent and maintenance of the premises and all expenses associated with the conduct of the games, such as the payment of an independent contractor to prepare the paper and supplies used by the players, violated the above language. The court stated that inasmuch as bingo games must be played in a room which necessitates the paying of rent, utilities, and other such "intangibles," "[c]learly, the legislature intended for these necessities to be considered `business expenses' that can be paid by part of the proceeds, or charities would not be able to conduct the bingo games at all."[18] The court, therefore, affirmed the lower court's finding that the operational expenses were clearly contemplated by the statute.
In light of the court's decision in State v. South County Jewish Federation, supra, interpreting substantially the same language as is currently contained in s. 849.0931, F.S. (1992 Supp.), it appears that operational expenses which are necessary in order to conduct the game of bingo may be paid from the proceeds of bingo games conducted by charitable organizations.
AS TO QUESTION 5:
Section 849.0931(11)(c), F.S. (1992 Supp.), provides that bingo games may be held on:
Property leased for a period of not less than 1 year by a charitable, nonprofit, or veterans' organization, providing the lease or rental agreement does not provide for the payment of a percentage of the proceeds generated at such premises to the lessor or any other party and providing the rental rate for such premises does not exceed the rental rates charged for similarpremises in the same locale. (e.s.)
The statute does not specify what criteria must be used in determining compliance with its terms. Where a statute does not specifically define words of common usage, the words are to be construed in their plain and ordinary sense.[19] The term "similar" has been defined as "[n]early corresponding; resembling in many respects; somewhat like, having a general likeness."[20]
Thus, the statute contemplates that the rental rate may not exceed that charged for property in the same locale which is comparable or resembles the property to be rented. In determining what constitutes "similar" premises, a number of factors may be considered such as the size or type of the building. A distinction, however, has been recognized by one court between the rent paid for leases and subleases. In State v. South County Jewish Federation, supra, certain charitable organizations had entered into subleases with Federation, a nonprofit charitable organization, to conduct bingo games on premises leased by Federation. Although the state attempted to compare the rents paid by the organizations under the subleases with that paid by Federation under its lease,[21] the court concluded that "it seems obvious that rental rates under leases and subleases will be different, because they involve different arrangements."[22]
The determination, however, of what constitutes "similar premises" in any given instance involves mixed questions of law and fact which this office cannot resolve.
AS TO QUESTION 6:
Section 849.0931(8), F.S. (1992 Supp.), provides:
Each person involved in the conduct of any bingo game must be a resident of the community where the organization is located and a bona fide member of the organization sponsoring such game and may not be compensated in any way for operation of such bingo game. . . .
An examination of s. 849.0931, F.S. (1992 Supp.), failed to reveal any exception to the above requirement. The above statute clearly requires that each member involved in the conduct of the bingo game must be a bona fide member of the organization sponsoring the game.[23] In State v. South County Jewish Federation,supra, the court, in considering a similar restriction, stated that the requirement that each person involved in the conduct of a bingo game must be a bona fide member of the organization sponsoring the game "merely means the person is properly enrolled in the organization by paying dues and complying with the membership requirements."[24]
Where a controlling law directs how a thing is to be done, that is, in effect, a prohibition against its being done in any other way.[25] Section 849.0931, F.S. (1992 Supp.), requires, among other things, that each person involved in the conduct of the bingo game must be a bona fide member of the organization sponsoring the game. There is currently no exception to the above statutory requirement, and this office cannot read into the statute such an exception. Your sixth question is, therefore, answered in the negative.
RAB/tjw
[1] 491 So.2d 1183 (4 D.C.A. Fla., 1986).
[2] Perlman v. State, 269 So.2d 385, 387 (4 D.C.A. Fla., 1972).
[3] See, ss. 849.0931, 718.114, and 723.079, F.S. (1992 Supp.).
[4] Section 849.0931(6), F.S. (1992 Supp.).
[5] Section 849.0931(5), F.S. (1992 Supp.).
[6] Section 849.0931(1)(g), F.S. (1992 Supp.).
[7] If the premises are leased, s. 849.0931, F.S. (1992 Supp.), prohibits the lease or rental agreement from providing for the payment of a percentage of the proceeds generated at such premises to the lessor or any other party. In addition, the rental rate for such premises may not exceed the rental rate charged for similar premises in the same locale.
[8] Section 849.0931(11), F.S. (1992 Supp.). In addition, with respect to bingo games conducted by a condominium or mobile home association or a group of residents of a mobile home park, such games may be conducted on property owned by the association or residents of a mobile home park or property which is a common area located in the condominium or mobile home park. Id.
[9] Section 849.093, F.S. 1985.
[10] 491 So.2d 1183 (4 D.C.A. Fla., 1986).
[11] See, s. 849.0931(1)(a), F.S. (1992 Supp.), stating:
"Bingo game" means and refers to the activity, commonly known as "bingo," in which participants pay a sum of money for the use of one or more bingo cards. When the game commences, numbers are drawn by chance, one by one, and announced. The players cover or mark those numbers on the bingo cards which they have purchased until a player receives a given order of numbers in sequence that has been preannounced for that particular game. This player calls out "bingo" and is declared the winner of a predetermined prize. More than one game may be played upon a bingo card, and numbers called for one game may be used for a succeeding game or games.
[12] See, s. 849.0931(12), F.S. (1992 Supp.).
[13] Thayer v. State, 335 So.2d 815 (Fla. 1976).
[14] Section 849.093, F.S. 1987.
[15] See, s. 849.093(2)(a), F.S. 1991, defining "[a]uthorized expenses" as:
[T]he actual business expenses essential to the conduct and playing of bingo, consisting of the following: the amount paid for rent for the use of the premises if such premises are rented exclusively for the purpose of conducting bingo; custodial services; equipment and supplies; accounting services for the required records and reports; bingo application and license fees; advertising; security personnel; and the actual cost to the licensee for prizes other than cash, not to exceed the limits on prize amounts specified in this section. . . .
[16] See, s. 849.093(2)(a), F.S. 1989.
[17] 491 So.2d 1183 (4 D.C.A. Fla., 1986).
[18] 491 So.2d at 1187.
[19] See, e.g., State, Department of Administration, Division of Retirement v. Moore, 524 So.2d 704 (1 D.C.A. Fla., 1988).
[20] Black's Law Dictionary Similar 1554 (4th rev. ed. 1968); and see, Webster's Third New International DictionarySimilar 2120 (unabridged ed. 1981) (having characteristics in common; comparable; one that resembles another).
[21] Section 849.093(10)(c), F.S. 1985, had provides that "the rental rate for such premises does not exceed the rental rates charged for similar premises in the same locale . . . ."
[22] 491 So.2d at 1186.
[23] See, Black's Law Dictionary Each 597 (4th rev. ed. 1968) ("denotes or refers to every one of the persons or things mentioned . . . [t]he word `any' is equivalent to `each'").
[24] 491 So.2d at 1187. The court rejected claims by the state that such individuals must be members of the organization prior to the time they began assisting with the bingo games provided that all such persons were enrolled in the organization at the time they began assisting with the bingo games.
[25] See, e.g., Alsop v. Pierce, 19 So.2d 799
(Fla. 1944).