The Honorable Charles W. Morris Sheriff, Okaloosa County 1250 Eglin Parkway Shalimar, Florida 32579-1234
Dear Sheriff Morris:
You have asked for my opinion on substantially the following questions:
1. Is it a violation of section 849.0931, Florida Statutes, for a charitable, nonprofit, or veterans' organization to contract with a for-profit corporation for the corporation to exert total control over the bingo proceeds generated by the organization?
2. Is it a violation of section 849.0931, Florida Statutes, for a charitable, nonprofit, or veterans' organization to contract with a for-profit corporation for the corporation to provide the organization with the personnel required by the organization to conduct bingo (i.e., a bingo caller, individuals to collect money from the players during each session of bingo, etc.) so long as at least one bona fide member of the organization, who has been appointed by the organization to be in charge of bingo, is present during the entire session of bingo?
3. Does the answer to Question Two change if all the personnel provided by the for-profit corporation are either bona fide regular, associate, or honorary members of the organization conducting bingo?
4. Does the answer to Question Two change if all the personnel provided by the for-profit corporation work only for tips, rather than being paid by the corporation to assist the organization in the conduct of bingo?
5. Is it a violation of section 849.0931, Florida Statutes, for an officer or employee of a for-profit corporation that has leased a facility to a charitable, nonprofit, or veterans' organization for the purpose of the organization conducting bingo, and who is either a bona fide regular, associate, or honorary member of the organization, to assist the organization in the conduct of bingo if the officer or employee is being paid by the for-profit corporation for this work?
6. In those cases where a charitable or nonprofit organization that is authorized to conduct bingo in accordance with section849.0931, Florida Statutes, does not have a formal membership, that is, groups such as the American Cancer Society, the American Heart Association, etc., are there any limitations on who can be involved in these types of organizations' bingo games?
7. Is it a violation of section 849.0931, Florida Statutes, for a group of charitable, nonprofit, or veterans' organizations that conduct individual sessions of bingo at the same leased facility, either on different days of the week or on the same days of the week at different times, to "pool" the proceeds from their individual sessions of bingo and then equally divide the total proceeds among those organizations?
8. If your answer to Question Seven is "yes," are the organizations involved limited in the number of jackpots each organization can offer during the "individual" sessions of bingo?
9. Is it a violation of section 849.0931, Florida Statutes, for the bingo cards sold by one organization to be used in another organization's session of bingo when a group of charitable, nonprofit, or veterans' organizations conduct individual sessions of bingo at the same leased facility on the same days of the week, at different times?
In sum:
1. Section 849.0931, Florida Statutes, requires that a nonprofit, charitable, or veterans' organization conducting bingo games control every aspect of the games, including control of the proceeds of the games.
2. and 3. Each person involved in conducting a bingo game must be a bona fide member of the charitable, nonprofit or veterans' organization. A bona fide member is one who pays dues and complies with the membership requirements of the organization.
4. and 5. Bona fide members of a charitable, nonprofit, or veterans' organization who are conducting a bingo game may not be compensated for their services, whether payment is offered in the form of tips or as wages from their regular employer.
6. Each person involved in the conduct of a bingo game must be a bona fide member of the organization sponsoring the game. There is currently no exception to this statutory requirement.
7. and 8. Section 849.0931, Florida Statutes, prohibits the "pooling" of bingo proceeds with a subsequent equal distribution to all participating organizations.
9. A charitable, nonprofit, or veterans' organization that allows the bingo cards sold by such organization to be used subsequently by another organization in a different session of bingo, acts outside the scope of section 849.0931, Florida Statutes, and may be subject to criminal prosecution.
According to your letter, your office recently completed an investigative survey of four for-profit bingo halls doing business in Okaloosa County. The bingo halls are owned and operated by for-profit corporations. The corporations were leasing their bingo halls to a number of local charitable, nonprofit, and veterans' organizations for the purpose of these organizations conducting bingo in accordance with section 849.0931, Florida Statutes.
Your investigation revealed a high degree of commercialization at all four of the for-profit bingo halls. For the most part, the bingo halls were in operation seven days per week, 12-14 hours per day. The for-profit corporations, not the charitable, nonprofit, and veterans' organizations, appeared to control the number of bingo games played during each session of bingo, the number of prizes and jackpots awarded during each session, and the amount of each prize and jackpot. The corporations also appeared to control all of the proceeds generated by their associate organizations' individual sessions of bingo. The corporations, not their associate organizations, were responsible for calculating the amount of money each organization received from their individual sessions of bingo, after the corporations subtracted their lease fees and other associated costs. Little oversight was observed on the part of the charitable, nonprofit, and veterans' organizations.
At each of the four for-profit bingo halls, you found that not everyone involved in the conduct of bingo was a bona fide member of the charitable, nonprofit, or veterans' organization conducting bingo. At each of the bingo halls, you found a group of what you classify as "professional volunteers." In some cases, these "volunteers" were officers or employees of the for-profit corporations who were paid by the corporations to be present and/or assist the corporation's associate organizations during the conduct of bingo. In other cases, the "volunteers" were provided by the for-profit corporations; however, the volunteers worked only for tips. Some of the officers and employees of the for-profit corporations, and some of the "volunteers," had become either regular, associate, or honorary members of one of more of the corporations' associate organizations in an attempt to comply with the statute.
You have asked a number of questions based on the results of this investigative survey. Initially, I must note that this office has no authority to resolve mixed questions of law and fact, that is, to determine whether a violation of the law has occurred. Such matters are the province of the judiciary and this office may not substitute its review and analysis of these questions for that of the courts. However, the following discussion is offered in an effort to provide you with direction in performing your duties and responsibilities.
The game of bingo is considered to be form of lottery.[1] The Florida Constitution generally prohibits lotteries, other than certain pari-mutuel pools,[2] with the exception of lotteries operated by the state.[3] Bingo also constitutes gambling within the scope of Chapter 849, Florida Statutes, which states that "[w]hoever plays or engages in any . . . game of chance, at any place, by any device whatever, for money or other thing of value, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."[4]
The statutes authorize certain nonprofit or veterans organizations to conduct bingo games. These organizations must be engaged in charitable, civic, community, benevolent, religious, or scholastic works, or similar activities, and must have been in existence and active for a period of three years or more.[5] If an organization is not engaged in charitable, nonprofit, or veterans' efforts, it may conduct bingo games so long as all of the proceeds from the games are returned to the players in the form of prizes.[6]
Question One
You ask whether it is a violation of section 849.0931, Florida Statutes, for a charitable, nonprofit, or veterans' organization to contract with a for-profit corporation in a fashion that allows the corporation to exert total control over the bingo proceeds generated by the organization.
Section 849.09, Florida Statutes, makes it unlawful for any person in this state to promote or conduct a lottery for money or anything of value. Section 849.0931(2)(a), Florida Statutes, however, provides:
"None of the provisions of this chapter shall be construed to prohibit or prevent charitable, nonprofit, or veterans' organizations engaged in charitable, civic, community, benevolent, religious, or scholastic works or other similar endeavors, which organizations have been in existence and active for a period of 3 years or more, from conducting bingo games, provided the entire proceeds derived from the conduct of such games, less actual business expenses for articles designed for and essential to the operation, conduct, and playing of bingo, are donated by such organizations to the endeavors mentioned above. In no case may the net proceeds from the conduct of such games be used for any other purpose whatsoever. The proceeds derived from the conduct of bingo games shall not be considered solicitation of public donations."
Thus, section 849.0931, Florida Statutes, constitutes a limited exception from the general prohibition against gambling in this state by authorizing charitable or nonprofit organizations to conduct bingo games, subject to the conditions and limitations contained therein.[7]
In Attorney General's Opinion 95-69, this office considered the relationship that may exist when a for-profit corporation leases space to a nonprofit or charitable organization conducting bingo games. That opinion concluded that the nonprofit, charitable, or veterans' organization conducting the bingo games must control every aspect of the game. This includes control of the proceeds of the games.
Nothing in section 849.0931, Florida Statutes, limits participation in bingo games to members of the sponsoring organization, although the statute requires that members of the organization be responsible for conducting these games.[8] Thus, an arrangement whereby a charitable, nonprofit, or veterans' organization enters into an agreement allowing a for-profit corporation to have total control over the bingo proceeds would not meet the requirements of section 849.0931, Florida Statutes.
Questions Two and Three
Your second and third questions relate to the personnel conducting bingo games. You have characterized these members as "regular," "associate," or "honorary" organization members.
Section 849.0931, Florida Statutes, does not use the designations "regular," "associate," or "honorary" to distinguish or describe members of charitable, nonprofit, or veterans' organizations included within the scope of the statute. Rather, the statute refers to "bona fide" members, and Florida courts have determined that being a "bona fide" member "merely means the person is properly enrolled in the organization by paying dues and complying with the membership requirements."[9] Thus, without regard to any designation such as "honorary," "associate," or "regular," members of a qualified organization conducting bingo games must be "bona fide" members as Florida courts have defined that term.
Section 849.0931(8), Florida Statutes, provides:
"Each person involved in the conduct of any bingo game must be a resident of the community where the organization is located and a bona fide member of the organization sponsoring such game and may not be compensated in any way for the operation of such bingo game."
An examination of section 849.0931, Florida Statutes, does not reveal any exception to the above requirement. Further, the Legislature has expressly stated that no charitable, nonprofit, or veterans' organization may serve as a sponsor of a bingo game conducted by another, but must be directly involved in the conduct of the bingo game.[10] As this office stated in Attorney General's Opinion 95-69, "[m]embership of corporate individuals in the nonprofit, charitable, or veterans' organization conducting the bingo cannot be used as a means of allowing unauthorized entities to engage in gaming as section 849.0931(2)(b), Florida Statutes, expressly prohibits a nonprofit, charitable, or veterans' organization from sponsoring a game conducted by another."
Therefore, pursuant to section 849.0931, Florida Statutes, it is my opinion that each person involved in conducting a bingo game must be a bona fide member of the charitable, nonprofit or veterans' organization. A bona fide member is one who pays dues and complies with the membership requirements of the organization. To allow a for-profit corporation to provide the personnel required to conduct bingo presents a situation where the charitable organization is merely acting as the sponsor of the bingo game rather than conducting such game on its own behalf. The participation of unauthorized individuals or entities in the operation of the game of bingo is a criminal offense.[11]
Questions Four and Five
Your fourth and fifth questions deal with paying the personnel involved in conducting bingo games for their services.
Section 849.0931(8), Florida Statutes, states that a "person involved in the conduct of any bingo game . . . may not be compensated in any way for the operation of such bingo game." The language of the statute is clear and contains nothing that could be read to permit the compensation of those involved in conducting bingo regardless of the method.[12]
Thus, it is my opinion that bona fide members of a charitable, nonprofit, or veterans' organization who are conducting a bingo game may not be compensated for this service whether payment is offered in the form of tips or as wages from their regular employer.
Question Six
Your sixth question is whether charitable or nonprofit organizations such as the American Cancer Society or the American Heart Association may conduct bingo games when these organizations have no formal membership.
Section 849.0931(8), Florida Statutes, states:
"Each person involved in the conduct of any bingo game must be a resident of the community where the organization is located and a bona fide member of the organization sponsoring such game and may not be compensated in any way for operation of such bingo game. When bingo games are conducted by a charitable, nonprofit, or veterans' organization, the organization conducting the bingo games shall be required to designate up to three members of that organization to be in charge of the games, one of whom shall be present during the entire session at which the bingo games are conducted. The organization conducting the bingo games is responsible for posting a notice, which notice states the name of the organization and the designated member or members, in a conspicuous place on the premises at which the session is held. . . ."
Further, subsection (9) of the statute provides that "[e]very charitable, nonprofit, or veterans' organization involved in the conduct of a bingo game must be located in the county, or within a 15-mile radius of, where the bingo game is located."
In Attorney General's Opinion 92-91, this office was asked whether an exception to the statute could be found that would permit a nonmember of a charitable, nonprofit or veterans' organization to conduct bingo where all the members of the organization were physically or mentally unable to conduct the games. Relying on section 849.0931(8), Florida Statutes, that opinion concluded that the statute clearly requires each member involved in the conduct of bingo games to be a bona fide member of the organization sponsoring the game.[13] There was no exception to this statutory requirement at that time, nor has the Legislature created one since.
Thus, it is my opinion that section 849.0931(8), Florida Statutes, requires, among other things, that each person involved in the conduct of a bingo game must be a bona fide member of the organization sponsoring the game. There is currently no exception to the above statutory requirement.
Questions Seven and Eight
You ask whether the "pooling" of bingo proceeds by different charitable, nonprofit, or veterans' organizations with a subsequent equal distribution of these proceeds among the participating organizations is legal under section 849.0931, Florida Statutes.
Section 849.0931(2)(a), Florida Statutes, provides in part that
"the entire proceeds derived from the conduct of such games, less actual business expenses for articles designed for and essential to the operation, conduct, and playing of bingo, [must be] donated by such organizations to the endeavors mentioned above. In no casemay the net proceeds from the conduct of such games be used forany other purpose whatsoever." (e.s.)
Subsection (2)(b) further provides that "[i]t is the express intent of the Legislature that no charitable, nonprofit, or veterans' organization serve as a sponsor of a bingo game conducted by another, but such organization may only be directly involved in the conduct of such a game as provided in this act."
The Legislature has clearly directed that the proceeds from a bingo game conducted by a charitable, nonprofit, or veterans' organization may not be used for any other purpose whatsoever. Based on this statutory language, it is my opinion that section849.0931, Florida Statutes, would prohibit the "pooling" of bingo proceeds with a subsequent equal distribution to all the participating organizations. In effect, this pooling of proceeds would constitute a sponsorship by one organization of the bingo games of another.
Question Nine
You have asked whether bingo cards sold by one charitable, nonprofit, or veterans' organization may be used by another such organization in a different bingo session.
A "bingo card" is defined in section 849.0931(1)(b), Florida Statutes, as
"the flat piece of paper or thin pasteboard employed by players engaged in the game of bingo. The bingo card shall have not fewer than 24 playing numbers printed on it. These playing numbers shall range from 1 through 75, inclusive. More than one set of bingo numbers may be printed on any single piece of paper."
The only statutory requirement in section 849.0931, Florida Statutes, relating to bingo cards or sheets is section849.0931(12)(c), Florida Statutes, which states:
"(12) Each bingo game shall be conducted in accordance with the following rules:
* * *
(c) The card or sheet on which the game is played shall be part of a deck, group, or series, no two of which may be alike in any given game."
While section 849.0931, Florida Statutes, specifically defines what constitutes a bingo game, prescribes how the game is to be played and when a player is to be declared a winner, there is no provision of the statute that addresses your question.
As discussed earlier herein, section 849.0931, Florida Statutes, constitutes a limited exception from the general prohibition against gambling in this state by authorizing charitable or nonprofit organizations to conduct bingo games subject to the conditions and limitations contained therein. Deviation from the terms of section 849.0931, Florida Statutes, may subject the charitable or nonprofit organization to criminal prosecution for gambling.[14] In light of the potential for possible criminal prosecution for engaging in this activity, this office would advise against the use of such a practice.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, s. 849.09, Fla. Stat., describing and prohibiting lotteries. Subsection (3) states that "[t]he provisions of this section do not apply to bingo as provided for in s. 849.0931" which authorizes the playing of bingo under the circumstances set forth therein.
[2] See, Art. X, s. 7, Fla. Const. 
[3] See, Art. X, s. 15, Fla. Const. 
[4] Section 849.08, Fla. Stat.
[5] Section 849.0931(2)(a), Fla. Stat. And see, s.849.0931(1)(c), Fla. Stat., defining a "[c]haritable, non profit, or veterans' organization" to mean "an organization which has qualified for exemption from federal income tax as an exempt organization under the provisions of s. 501(c) of the Internal Revenue Code of 1954 or s. 528 of the Internal Revenue Code of 1986, as amended; which is engaged in charitable, civic, community, benevolent, religious, or scholastic works or other similar activities; and which has been in existence and active for a period of 3 years or more.
[6] Section 849.0931(3), Fla. Stat.
[7] Section 849.0931(4), Fla. Stat., also authorizes a condominium association, a mobile home owners' association, or a group of residents of a mobile home park or recreational vehicle park as defined in Ch. 513, Fla. Stat., to conduct bingo as prescribed therein.
[8] See, Op. Att'y Gen. Fla. 97-60 (1997) and s. 849.0931(8), Fla. Stat., which provides:
"Each person involved in the conduct of any bingo game must be a resident of the community where the organization is located and a bona fide member of the organization sponsoring such game and may not be compensated in any way for operation of such bingo game. When bingo games are conducted by a charitable, nonprofit, or veterans' organization, the organization conducting the bingo games shall be required to designate up to three members of that organization to be in charge of the games, one of whom shall be present during the entire session at which the bingo games are conducted. The organization conducting the bingo games is responsible for posting a notice, which notice states the name of the organization and the designated member or members, in a conspicuous place on the premises at which the session is held. In no event may a caller in a bingo game be a participant in that bingo game."
[9] See, State v. South County Jewish Federation,491 So.2d 1183 (Fla. 4th DCA 1986), and Op. Att'y Gen. Fla. 95-69 (1995).
[10] See, s. 849.0931(2)(b), Fla. Stat.
[11] See, Madar v. State, 376 So.2d 446 (Fla. 4th DCA 1979). And see, s. 849.0931(13), Fla. Stat., providing criminal penalties for persons or organizations violating the provisions of the statute.
[12] See, e.g., Op. Att'y Gen. Fla. 92-91 (1992).
[13] Id.
[14] See, s. 849.0931(13), Fla. Stat., which provides that:
"Any organization or other person who willfully and knowingly violates any provision of this section is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s.775.083. For a second or subsequent offense, the organization or other person is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."